UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEE,<br><br>                    Plaintiff,<br><br>         v.<br><br>DONALD TRUMP, President of the United States,<br><br>                    Defendant. | No. 1:20 Civ. 02034 (JPO) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
Attorney for Defendants
86 Chambers Street, Third Floor
New York, New York 10007
Tel.:    (212) 637-2614

REBECCA R. FRIEDMAN
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.      The COVID-19 Pandemic and COVID-19 Travel Proclamation ...........................2

    II.     Procedural Background...........................................................................................4

ARGUMENT ........................................................................................................................5

    I.      Legal Standard .....................................................................................................5

          A.     Dismissal Under Rule 12(b)(1).....................................................................5

          B.     Dismissal Under Rule 12(b)(6).....................................................................6

    II.     The Court Lacks Subject-Matter Jurisdiction over this Action ..............................6

          A.     Courts May Not Review Non-Constitutional Challenges to the
               Political Branches' Decisions to Exclude Noncitizens...............................6

          B.     Separation of Powers Bars Injunctive Relief Against the President...........7

    III.    The Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted............10

          A.     The Plaintiff Fails to State a Claim Under the APA.................................10

          B.     The Plaintiff Fails to State a Claim that the Proclamation Is
               Unauthorized by Statute and Contrary to Law .........................................11

           C.     The Plaintiff Fails to State Constitutional Claims ...................................14

                1.     *Trump v. Hawaii* Forecloses the Plaintiff's Constitutional Law
                    Claims ...............................................................................................14

                2.     The Plaintiff's Constitutional Claims Also Cannot Succeed for
                     Additional Reasons ...........................................................................21

CONCLUSION....................................................................................................................23

## TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*Alharbi v. Miller,*
    368 F. Supp. 3d 527 (E.D.N.Y. 2019) ........................................................................... 21

*Allen v. Wright,*
    468 U.S. 737 (1984).......................................................................................................... 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................................ 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 555 (2007)............................................................................................................ 6

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
    333 U.S. 103 (1948).......................................................................................................... 20

*Dalton v. Specter,*
    511 U.S. 462 (1994).......................................................................................................... 10

*Dep't of Homeland Sec. v. Thuraissigiam,*
    140 S. Ct. 1959 (2020)........................................................................................................ 6

*Devonish v. Atl. Cty. Justice Facility,*
    No. Civ. A. 10-1866 (JBS), 2010 WL 3024858 (D.N.J. July 29, 2010)............................ 9

*E. Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ........................................................................................... 10

*Emami v. Nielsen,*
    365 F. Supp. 3d 1009 (N.D. Cal. 2019) ........................................................................... 21

*FCC v. Beach Commc'n,*
    508 U.S. 307 (1993).......................................................................................................... 18

*Fiallo v. Bell,*
    430 U.S. 787 (1977)...................................................................................................... 6, 21

*Fong Yue Ting v. United States,*
    149 U.S. 698  (1893)......................................................................................................... 13

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992)................................................................................................. 7, 8, 10

*Gebhardt v. Nielsen,*
    879 F.3d 980 (9th Cir. 2018) ........................................................................................... 21

ii

*Haitian Refugee Ctr., Inc. v. Baker*,
    789 F. Supp. 1552 (S.D. Fla. 1991) ................................................................ 11

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................................... 11

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) .............................................................................................. 20

*Int'l Refugee Assistance Project v. Trump*,
    883 F.3d 233 (4th Cir. 2018) ........................................................................... 18

*Int'l Refugee Assistance Project v. Trump*,
    961 F.3d 635 (4th Cir. 2020) ..................................................................... *passim*

*Joorabi v. Pompeo*,
    No. 1:20 Civ. 108 (RCL), 2020 WL 2527209 (D.D.C. May 17, 2020) ............................ 9

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) ...................................................................................... 21

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ................................................................................... *passim*

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    302 F. Supp. 3d 541 (S.D.N.Y. 2018) ............................................................... 9

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    928 F.3d 226 (2d Cir. 2019) ............................................................................ 19

*Luckett v. Bure*,
    290 F.3d 493 (2d Cir. 2002) .............................................................................. 5

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .............................................................................. 5

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996) ................................................................................ 5

*Mayor & City Council of Baltimore v. Trump*,
    416 F. Supp. 3d 452 (D. Md. 2019) ................................................................ 18

*Mississippi v. Johnson*,
    71 U.S. 475 (1867) .......................................................................................... 7, 8

*Napolitano v. Flynn*,
    949 F.2d 617 (2d Cir. 1991) .............................................................................. 8

*Nat'l Fed'n of the Blind, Inc. v. Lamone*,
No. 19 Civ. 2228 (SAG), 2020 WL 618674 n.4 (D. Md. Feb. 10, 2020)..................... 4, 5

*Norris v. Poole*,
No. 8:10-750 (JFA) (BHH), 2010 WL 1903970 (D.S.C. Apr. 19, 2010) ........................ 9

*Pen Am. Ctr., Inc. v. Trump*,
No. 18 Civ. 9433 (LGS), 2020 WL 1434573 (S.D.N.Y. Mar. 24, 2020) ........................ 8

*Selevan v. N.Y. Thruway Auth.*,
584 F.3d 82 (2d Cir. 2009)............................................................................................... 6

*Serv. Emp. Int'l Union Local 200 United v. Trump*,
420 F. Supp. 3d 65 (W.D.N.Y. 2019) ........................................................................... 10

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953) ......................................................................................................... 6

*Straw v. U.S. Dep't of State*,
No. 19 Civ 2294 (ELH), 2020 WL 2490022 (D. Md. May 14, 2020)............................ 21

*Swarthout v. Cooke*,
562 U.S. 216 (2011) ....................................................................................................... 21

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) ............................................................................................. *passim*

*U.S. ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950).......................................................................................... 6, 13, 22

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................................................................................................... 22

## STATUTES

5 U.S.C. § 701(a)(2)....................................................................................................... 10

5 U.S.C. § 702................................................................................................................. 10

8 U.S.C. § 1182(f)................................................................................................... 1, 3, 12

8 U.S.C. § 1185(a) ...................................................................................................... 3, 12

**OTHER AUTHORITIES**

*Proclamation No. 5829,*
    53 Fed. Reg. 22,289 (1988) ............................................................................. 13

*Proclamation 9984, Suspension of Entry as Immigrants and Nonimmigrants of Persons who*
    *Pose a Risk of Transmitting 2019 Novel Coronavirus,*
    85 Fed. Reg. 6709 (Jan. 31, 2020) ............................................................. *passim*

*Proclamation 9992, Suspension of Entry as Immigrants and Nonimmigrants of Certain*
    *Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus,*
    85 Fed. Reg. 12855 (Feb. 29, 2020) ....................................................................3

*Proclamation 9993, Suspension of Entry as Immigrants and Nonimmigrants of Certain*
    *Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus,*
    85 Fed. Reg. 15045 (Mar. 11, 2020) ...................................................................3

*Proclamation 9996, Suspension of Entry as Immigrants and Nonimmigrants of Certain*
    *Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus*,
    85 Fed. Reg. 15341 (Mar. 14, 2020), available at
    https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-
    immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-
    coronavirus-2/ ....................................................................................................3

*Proclamation 10041, Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of*
    *Certain Additional Persons Who Pose a Risk of Transmitting Novel Coronavirus*,
    85 Fed. Reg. 31933 (May 24, 2020), available at
    https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-
    immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-novel-
    coronavirus/ .......................................................................................................3

**INTRODUCTION**

The Presidential Proclamation on the "Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus" (the "COVID-19 Travel Proclamation" or the "Proclamation") is a straightforward effort by President Trump to protect persons in the United States from the threat of COVID-19.  Pro se plaintiff David Lee ("plaintiff") argues that the Proclamation's "discriminative nature" violates the Administrative Procedure Act ("APA") and violates his equal protection rights under the Due Process Clause of the Fifth Amendment and his equal protection rights under the Fourteenth Amendment.  The plaintiff also argues that President Trump's use of the phrase "Chinese virus" in official tweets and statements violates the Fifth Amendment, Fourteenth Amendment, and APA.  The plaintiff requests declaratory relief that the Proclamation is "unauthorized by statute and contrary to law" and broad relief against discretionary Presidential acts, including that the President immediately order travel ban waivers for his family.

The Court should dismiss the plaintiff's Amended Complaint.  First, the Court lacks subject matter jurisdiction because the plaintiff's request for a "judgment declaring that the Chinese ban unauthorized by statute and contrary to law" runs afoul of the general principle disfavoring judicial review of non-constitutional statutory challenges to a decision to exclude an alien abroad.  Second, separation of powers bars this Court from issuing injunctions purporting to supervise the President's performance of his duties.

The Complaint must also be dismissed for failure to state a claim.  To begin, the APA does not provide a proper basis to challenge a presidential proclamation.  And even if the plaintiff's statutory claim were deemed to be reviewable, the Court should conclude that the Proclamation is a proper exercise of the President's broad authority in 8 U.S.C. § 1182(f) to impose additional

restrictions on entry for any alien or class of aliens if the President finds that their admission "would be detrimental to the interests of the United States."  Such a conclusion is consistent with the Supreme Court's recent ruling in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018).  *Hawaii* also disposes of the plaintiff's constitutional law claims that the Proclamation violates his equal protection rights.  As *Hawaii* explains, the plaintiff's constitutional claims are governed by, and fail under, *Kleindienst* v. *Mandel*, 408 U.S. 753 (1972), which requires upholding the Proclamation because it rests on a "facially legitimate and bona fide reason."  Here, the Proclamation's goal of protecting individuals in the United States from exposure to COVID-19 is a facially legitimate reason sufficient to survive under the narrow and deferential standard of review as set forth in *Kleindienst* and for reasons discussed in detail in *Hawaii*.

## BACKGROUND

### I.       The COVID-19 Pandemic and COVID-19 Travel Proclamation

The United States has taken a range of steps to respond to the COVID-19 pandemic and stem the spread of the virus.  This case arises out of one of those steps – Presidential Proclamation 9984, which President Trump signed on January 31, 2020.  *See* Presidential Proclamation 9984, Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus, 85 Fed. Reg. 6709 (Jan. 31, 2020).

The Proclamation discusses COVID-19, the severe acute respiratory illness caused by a novel coronavirus that was originally discovered in China, and noted that the World Health Organization had declared the COVID-19 outbreak to be a "public health emergency of international concern."  *Id.*  The Proclamation discusses "the importance of protecting persons within the United States from the threat of this harmful communicable disease."  *Id.* at 6710.  The Proclamation notes that, given the number of travelers arriving from China, the United States was

unable to effectively monitor arriving parties, and this could be harmful to the individuals in the U.S.  As the Proclamation explains:  "The potential for widespread transmission of the virus by infected individuals seeking to enter the United States threatens the security of our transportation system and infrastructure and the national security."  *Id.* at 6710.

To address these challenges, President Trump issued the Proclamation pursuant to 8 U.S.C. §§ 1182(f) and 1185(a), noting that it was in the "interests of the United States to take action to restrict and suspend the entry into the United States, as immigrants or nonimmigrants, of all aliens who were physically present within the People's Republic of China . . . during the 14-day period preceding their entry or attempted entry into the United States."  *Id.* at 6710.

As the plaintiff alleged in his Amended Complaint, in addition to the Proclamation, the President has since issued additional proclamations concerning travel to the United States from Europe and Iran.  *See* Amended Complaint ¶¶ 27-28; *see also* Proclamation 9992, Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus, 85 Fed. Reg. 12855 (Feb. 29, 2020); Proclamation 9993, Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus, 85 Fed. Reg. 15045 (Mar. 11, 2020).[1]

---

[1] Since the Amended Complaint was filed, the President has issued additional travel proclamations relating to COVID-19 including a March 14, 2020 proclamation that restricts travel to the United States of foreign nationals who were physically present in the United Kingdom and Ireland within the 14 days preceding their entry or attempted entry into the United States and a May 24, 2020 proclamation that suspends entry into the United States of foreign nationals who were physically present in the Brazil within 14 days preceding their entry or attempted entry into the United States. *See* Proclamation 9996, Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus, 85 Fed. Reg. 15341 (Mar. 14, 2020), available at  https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-coronavirus-2/ and Proclamation 10041, Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Novel Coronavirus, 85 Fed. Reg. 31933 (May 24, 2020), available at

## II.      Procedural Background

On March 6, 2020, the plaintiff, proceeding *pro se*, filed a complaint and an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction against President Donald Trump relating to the President Trump's January 31, 2020 COVID-19 Travel Proclamation.  *See* ECF No. 4 ("Complaint"); ECF No. 5 ("First TRO Motion").   In those filings, the plaintiff requested a preliminary injunction or temporary restraining order to stop the Proclamation from taking effect.  *See* Complaint, Prayer for Relief; TRO Motion, Prayer Relief.  On March 23, 2020, this Court denied the plaintiff's motion for a temporary restraining order, explaining that: (1) given the developing response to the global pandemic and the fact that the President entered two additional travel bans, the "[p]laintiff's argument that any travel bans with respect to China and Iran were discriminatory in violation of his Fifth and Fourteenth Amendment rights has a low likelihood of success on the merits;" (2) the plaintiff failed to plead irreparable harm; (3) the plaintiff has not advanced any argument that the balance of hardship tips in his favor; and (4) "the public interest strenuously weighs against lifting any travel bans put in place to prevent coronavirus's spread."  ECF No. 6 ("TRO Denial") at 1-2.

On May 4, 2020, the plaintiff filed an Amended Complaint, as well as two motions for a temporary restraining order or preliminary injunction.  *See* ECF No. 7 ("Amended Comp."); ECF No. 8 ("Second TRO Motion"); ECF No. 9 ("Third TRO Motion," and together with Second TRO Motion, "TRO Motions").   The TRO Motions are currently *sub judice* – the parties submitted briefing, and the Court heard oral argument on June 17, 2020.  Like the TRO Motions, the

---

https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-novel-coronavirus/.   The Court can take judicial notice of presidential proclamations.  *See, e.g.*, *Nat'l Fed'n of the Blind, Inc. v. Lamone*, No. 19 Civ. 2228 (SAG), 2020 WL 618674, at *17 n.4 (D. Md. Feb. 10, 2020).

Amended Complaint asserts that the Proclamation's purported "discriminative nature" (1) "violates the plaintiff['s] equal protection rights of the Due Process Clause of the Fifth Amendment;" (2) "violates the plaintiff's equal protection rights of the Fourteenth Amendment;" and (3) "violates the Administrative Procedure Act."   Amended Complaint ¶¶ 58-60.   The Amended Complaint requests the same injunctive relief as the TRO Motions – an order that the defendant immediately issue travel ban waivers to the plaintiff's family and an "order [for] the defendant to remove or replace all tweets with 'Chinese virus' from @RealDonaldTrump, @POTUS, and @WhiteHouse Twitter accounts."   Amended Complaint, Prayer for Relief ¶¶ 2-3. The Amended Complaint also requests that the Court enter a "judgment declaring that the Chinese ban unauthorized by statute and contrary to law," and "ask the defendant to issue a public apology to plaintiff, plaintiff's family and other affected people."   *Id.*, Prayer for Relief ¶¶ 1, 5.

## ARGUMENT

### I.   Legal Standard

#### A.   Dismissal Under Rule 12(b)(1)

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [] [C]ourt lacks the statutory or constitutional power to adjudicate it.'"   *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).   Plaintiffs carry the burden of establishing that subject-matter jurisdiction exists over their complaint.   *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

### B.  Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  The Court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'"  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Allegations that are "no more than conclusions[] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief.  *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 557 (2007)).

## II.     The Court Lacks Subject-Matter Jurisdiction over this Action

### A.  Courts May Not Review Non-Constitutional Challenges to the Political Branches' Decisions to Exclude Noncitizens

As the Government has previously explained in its opposition to the TRO Motions, there is a fundamental principle long recognized by courts that the political branches' decision to exclude aliens abroad is not judicially reviewable.  *See* Defendant's Opposition to Plaintiff's Motions for a Temporary Restraining Order and/or Preliminary Injunction ("TRO Opposition" or "TRO Opp.") (ECF No. 18) at 6-7.  The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 140

S. Ct. 1959, 1982 (2020) (recognizing the fundamental proposition that the "power to admit or exclude aliens is a sovereign prerogative" and that the "Constitution gives the political department of the government plenary authority to decide which aliens to admit") (internal quotation marks and citation omitted). The Supreme Court has permitted extremely limited review only where U.S. citizens claim that a visa denial burdens their own constitutional rights. *See Kleindienst v. Mandel*, 408 U.S. 753 (1972).

This Court need not address this reviewability argument to the extent that the Court dismisses the plaintiff's statutory claims on the merits. *See Hawaii*, 138 S. Ct. at 2407.[2] However, if the Court is inclined to allow the plaintiff's statutory claims to proceed, then the Court must consider whether the claims are even reviewable in the first place.

### B.  Separation of Powers Bars Injunctive Relief Against the President

The Supreme Court has held that the separation of powers generally prevents a federal court from issuing an injunction purporting to supervise the President's performance of his duties. *Mississippi v. Johnson*, 71 U.S. 475, 501 (1867) ("[T]his court has no jurisdiction of a bill to enjoin the President in the performance of his official duties . . . ."); *id.* at 499 ("When presidential action requires "the exercise of judgment," "general principles . . . forbid judicial interference with the exercise of Executive discretion.").

The Supreme Court reaffirmed these fundamental principles in *Franklin v. Massachusetts*, 505 U.S. 788 (1992).  In *Franklin*, a district court issued an injunction requiring the President to take certain actions related to the census.  Writing for a plurality, Justice O'Connor explained that

---

[2] In *Hawaii*, the Supreme Court described this non-reviewability argument as "present[ing] a difficult question," 138 S. Ct. at 2407, but did not explicitly address judicial review, and instead elected to "assume without deciding that plaintiffs' statutory claims [were] reviewable," because, "even assuming that some form of review is appropriate," the plaintiffs' challenges to the entry restrictions at issue in that case failed on the merits.  *Hawaii*, 138 S. Ct. at 2407, 2409-11.

"the District Court's grant of injunctive relief against the President himself [was] extraordinary, and should have raised judicial eyebrows." *Id.* at 802 (plurality) (citation omitted).  The plurality reiterated that "in general, '[the] court has no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Id.* at 802-03 (quoting *Mississippi*, 71 U.S. at 501).  And Justice Scalia agreed that the President "may not be ordered to perform particular executive . . . acts at the behest of the Judiciary," a conclusion "implicit in the separation of powers." *Id.* at 827 (Scalia, J., concurring in the judgment).[3]  In a recent decision from this District, another district judge correctly applied these principles to hold that injunctive relief against the President was inappropriate because it would "implicate Defendant's discretionary responsibilities" over White House press credentials and over national security issues.  *Pen Am. Ctr., Inc. v. Trump*, No. 18 Civ. 9433 (LGS), 2020 WL 1434573, at *10 (S.D.N.Y. Mar. 24, 2020) ("Issuing an injunction to the President would impede his discretionary authority in these realms, and more generally, risk improper judicial encroachment on the executive branch. The remaining claims will proceed as claims for declaratory relief only, and the application for injunctive relief is denied.").

Here, the plaintiff's requested relief addresses the President's discretionary authority as laid out in the Proclamation.  Amended Complaint, Prayer for Relief ¶ 2.  As explained in further detail below, § 1182(f) provides the President with broad discretion to suspend the entry of aliens into the United States.  *See infra* Sections III.A, III.B; *see also Hawaii*, 138 S. Ct. at 2408 (explaining that § 1182(f) "exudes deference to the President," and that courts have "previously observed that § 1182(f) vests the President with 'ample power' to impose entry restrictions in

---

[3] The *Franklin* plurality, like the *Mississippi* Court, "left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty.'" *Franklin*, 505 U.S. at 802 (quoting *Mississippi*, 71 U.S. at 498-99).  A ministerial duty is "a simple, definite duty" that is "imposed by law" where "nothing is left to discretion." *Mississippi*, 71 U.S. at 498; *see also Napolitano v. Flynn*, 949 F.2d 617, 622-23 (2d Cir. 1991).

addition to those elsewhere enumerated in the INA."). Therefore, the Court lacks jurisdiction to grant injunctive relief against the President forcing him to issue travel waivers under the Proclamation.

The Amended Complaint also requests an order directing the President to remove or replace tweets containing the words "Chinese virus" and to stop using those terms in the future in verbal and written statements. Amended Complaint, Prayer for Relief ¶ 3. In a different context, a court in this district declined to order injunctive relief against the President related to the management of his Twitter account. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 579 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226 (2d Cir. 2019).[4] Here too, to the extent the plaintiff is seeking injunctive relief related to the President's discretionary communication duties, the Court cannot grant the relief.

As part of his requested relief, the plaintiff also requests that the Court "ask the [President] to issue a public apology." Amended Complaint, Prayer for Relief ¶ 5. Courts have properly denied requests for an order directing a public apology. *See Devonish v. Atl. Cty. Justice Facility*, No. Civ. A. 10-1866 (JBS), 2010 WL 3024858, at *3 (D.N.J. July 29, 2010) (noting a lack of authority that would "permit a court to order a defendant to speak in a manner that may well contravene the beliefs the defendant holds."); *Norris v. Poole*, No. 8:10-750 (JFA) (BHH), 2010 WL 1903970, at *3 (D.S.C. Apr. 19, 2010) (explaining in a § 1983 action that plaintiff "has no legal right to a published apology"), *report and recommendation adopted*, No. 8:10-750 (JFA) (BHH), 2010 WL 1903971 (D.S.C. May 11, 2010). The fact that the plaintiff merely asks the

---

[4] The Court discussed, but did not rule, on whether the President's actions with regards to the Twitter communications were discretionary. *Id.* at 578.

Court to "ask" the President to issue an apology, rather than order one, does not make the requested relief any more appropriate and raises justiciability concerns.

### III.   The Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

#### A.  The Plaintiff Fails to State a Claim Under the APA

The plaintiff asserts that he is entitled to APA relief due to the Proclamation's "discriminative nature," *see* Amended Complaint ¶ 60, but the APA does not permit review over the President's actions in issuing the Proclamation.  The APA authorization of suits by "person[s] suffering [a] legal wrong because of agency action," 5 U.S.C. § 702, does not extend to claims against the President because the President is not an agency within the meaning of the APA.  As the Supreme Court has instructed, "the APA does not expressly allow review of the President's actions, [and thus] we must presume that his actions are not subject to its requirements."  *Franklin*, 505 U.S. at 801; *see also Dalton v. Specter*, 511 U.S. 462, 468 (1994) ("The APA does not apply to the President"); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018) ("[t]he scope of our review [under the APA] . . . is limited to 'agency action,' and the President is not an 'agency.'. . . . 'Accordingly, the President's "actions are not subject to [APA] requirements."); *Serv. Emp. Int'l Union Local 200 United v. Trump*, 420 F. Supp. 3d 65, 75 (W.D.N.Y. 2019) ("[W]hile a president's actions may be reviewable on other bases, such as constitutionality, they are not subject to the requirements of the APA.").

Even aside from the inapplicability of APA review to Presidential actions, the plaintiff's APA claim also fails because of the discretionary nature of the action being challenged.  The APA expressly forbids courts from reviewing "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  That limitation on review applies when the relevant statute "is drawn so that a court would have no meaningful standard against which to judge the agency's

exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Here, there is no meaningful

standard against which a court could evaluate the President's decisions in connection with

§ 1182(f)—assuming that such decisions could properly be characterized as "agency action[s]" for

purposes of APA review, which they are not.  *See Hawaii*, 138 S. Ct. at 2408 ("By its terms, §

1182(f) exudes deference to the President in every clause."); *Haitian Refugee Ctr., Inc. v. Baker*,

789 F. Supp. 1552, 1575-76 (S.D. Fla. 1991) (holding that § 1182(f) "provides no discernable

standards by which this court can review the challenged actions under the APA").[5]

Finally, as the only defendant named in the Amended Complaint is President Trump, the

APA's inapplicability to presidential action is fatal to the plaintiff's APA claim.  The plaintiff's

references to the CDC and the Department of State's failure to grant his requested waivers, *see*

Amended Complaint ¶¶ 4-7, in an apparent effort to characterize his APA claim as more broadly

challenging the implementation of the Proclamation by the "Federal Government," *id.* ¶ 54, is

unavailing.

### B.  The Plaintiff Fails to State a Claim that the Proclamation Is Unauthorized by Statute and Contrary to Law

The Proclamation is plainly authorized by § 1182(f) and § 1185(a) and thus the plaintiff's

assertion that it is "unauthorized by statute" is incorrect and fails to state a claim.  Section 1182(f)

provides the President with broad authority to issue proclamations:

> Whenever the President finds that the entry of any aliens or of any class of aliens
> into the United States would be detrimental to the interests of the United States, he
> may by proclamation, and for such period as he shall deem necessary, suspend the
> entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose
> on the entry of aliens any restrictions he may deem to be appropriate.

---

[5] The plaintiff also argues that the President's official use of terms like "Chinese virus" "to incite
racial hatred toward Asian Americans . . . is an even more obvious violation of the . . . [APA]."
Amended Complaint ¶ 61.  However, as discussed above, the President is not subject to the APA.

8 U.S.C. § 1182(f); *see also* id. § 1185(a) (an alien's entry and departure is subject to "such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe").  The breadth of § 1182(f) is confirmed in the Supreme Court's decision in *Hawaii*, which affirmed the President's authority to issue a presidential proclamation that barred entry by nationals from six predominantly Muslim countries issued under § 1182(f).  The Court in *Hawaii* recognized that the text of § 1182(f) plainly provides the President with broad discretion to lawfully suspend the entry of certain aliens into the United States:

> By its plain language, § 1182(f) grants the President broad discretion to suspend the entry of aliens into the United States.  The President lawfully exercised that discretion based on his findings—following a worldwide, multi-agency review—that entry of the covered aliens would be detrimental to the national interest.

138 S. Ct. at 2408.  The Court further noted that § 1182(f) "exudes deference to the President," and that courts have "previously observed that § 1182(f) vests the President with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA."  *Hawaii*, 138 S. Ct. at 2408.

The President issued the Proclamation at issue in this case under the same authority he exercised in *Hawaii* – 8 U.S.C. §§ 1182(f) and 1185(a) – based on his finding that, except as otherwise specified in the Proclamation, allowing people from China unrestricted entry into the United States would "be detrimental to the interests of the United States."  Proclamation, 85 Fed. Reg. at 6710.  Just like the Supreme Court in *Hawaii*, this Court should reject these claims because the "Proclamation is squarely within the scope of Presidential authority under the INA."  *Hawaii*, 138 S. Ct. at 2415.[6]

---

[6] Any attempt by the plaintiff to challenge the duration of the proclamation is also improper.  *See* Amended Complaint ¶ 52 ("As of today, coronavirus is contained in Hubei Province for weeks, and there is ZERO active cases in both Hubei Province and the plaintiff's families' home Teochew region.  But the travel ban is still in effect.").  The President is not "required to prescribe in advance a fixed end date for the entry restrictions."  *Hawaii*, 138 S. Ct. at 2410 (noting that not one of the

The plaintiff's statutory claim must also be dismissed because the plaintiff failed to identify any contradictions within the INA. *Id. at* 2412 ("Because plaintiffs do not point to any contradiction with another provision of the INA, the President has not exceeded his authority under § 1182(f).") To the extent that the plaintiff's Amended Complaint could be read as arguing that the denial of his family's waiver applications is contrary to law, the plaintiff has not shown that the President was under any obligation to allow for waivers. *Joorabi v. Pompeo*, No. 1:20 Civ. 108 (RCL), 2020 WL 2527209, at *5 (D.D.C. May 17, 2020) (discussing President's authority to issue proclamation under § 1182(f), and explaining that "the President was under no obligation to allow for waivers at all, as no separate statute or regulation requires waivers").

The Proclamation also is not contrary to law because it is an exercise of the President's inherent constitutional authority. The President has "inherent executive power" over "exclusion of aliens" that comes from and is part of his foreign affairs powers. *Knauff*, 338 U.S. at 542-43. Because "exclusion of aliens is a fundamental act of sovereignty," the exclusion power "is inherent in the executive power to control the foreign affairs of the nation." *Id.*; *see also Fong Yue Ting v. United States*, 149 U.S. 698 705 (1893) ("the exclusion of aliens" is a matter of "international relations," and a constitutional power exercised by the President). Here, the Proclamation was also issued pursuant to the "authority vested in [the President] by the Constitution." 85 Fed. Reg. at 6710.

---

43 suspension orders issued prior to the case specified a precise end date). A President may "deem" a suspension "necessary" even though he does not know in advance how long that situation will persist. *See, e.g.*, Proclamation No. 5829, 53 Fed. Reg. 22,289 (1988) (President Reagan) (suspending entry of certain Panamanian nationals "until such time as . . . democracy has been restored in Panama"). So too here, the President validly suspended entry until the COVID-19 pandemic conditions are redressed. That determination is subject to continued monitoring, with various cabinet secretaries "recommend[ing] that the President continue, modify, or terminate this proclamation" on a continued basis. Proclamation, 85 Fed. Reg. at 6711.

### C.  The Plaintiff Fails to State Constitutional Claims

As set forth below, the plaintiff's constitutional challenges to the Proclamation fail under the applicable standard set forth in *Kleindienst v. Mandel*, 408 U.S. 753 (1972).  Moreover, given the Supreme Court's conclusion that the proclamation in *Hawaii* satisfied *Mandel*'s standard, it is clear this Proclamation also satisfies that standard.  *See Hawaii*, 138 S. Ct. at 2417-23.  The Supreme Court in *Hawaii* engaged in a rational-basis review, but as the Fourth Circuit clarified last month in reviewing the same proclamation at issue in *Hawaii* on a motion to dismiss, *Hawaii* "confirmed *Mandel*'s continuing vitality . . . in assessing" proclamations regarding entry of foreign nationals.  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 651 (4th Cir. 2020) (by engaging in rational basis review, the *Hawaii* "Court in no way undermined the conclusion that *Mandel* provides the applicable standard").  Even if this Court were to engage in a rational basis review, the plaintiff's claims would still fail because the Proclamation is "plausibly related to the Government's stated objective."  *Id.*

### 1.  *Trump v. Hawaii* Forecloses the Plaintiff's Constitutional Law Claims

In *Hawaii,* the Supreme Court clarified that challenges to a proclamation brought by U.S. citizens claiming a violation of their constitutional rights are evaluated under the deferential standard of review set forth in *Mandel*.  *See Hawaii*, 138 S. Ct. at 2419 (noting that the Supreme Court has "reaffirmed and applied [*Mandel*'s] deferential standard of review across different contexts and constitutional claims"); *id*. at 2420 n.5 (stating that *Mandel*'s "circumscribed inquiry applies to any constitutional claim concerning the entry of foreign nationals").  *Mandel* allows a "circumscribed judicial inquiry" where an alien's denial of entry "allegedly burdens the constitutional rights of a U.S. citizen."  *Id.* at 2419.  However "[g]iven the authority of the political branches over admission," judicial review is narrow and limited to "whether the Executive gave a

'facially legitimate and bona fide' reason for its action." *Id.* at 2419 (citing *Mandel*, 408 U.S. at 769).  Specifically, *Mandel* explains that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification" against the asserted constitutional interests of U.S. citizens. *Mandel*, 408 U.S. at 770.  That deferential standard reflects the Constitution's "exclusive[ ]" allocation of power over the admission of aliens to the "political branches." *Mandel*, 408 U.S. at 765 (citation omitted).[7]

Following a similar analysis as the Supreme Court in *Hawaii*, this Court should conclude that the Proclamation meets the *Mandel* standard.  The Supreme Court in *Hawaii* definitively held that the proclamation at issue in that case satisfied not only *Mandel*'s "conventional application," but also "rational basis review." *Hawaii*, 138 S. Ct. at 2420.  The Supreme Court assumed that rational-basis review would apply and concluded that the proclamation met that standard, 138 S. Ct. at 2420, and thus the Court did not need to address whether the even more deferential standard under *Mandel* should instead apply.   However, the Court explained that a "conventional application of *Mandel*, asking only whether the policy is facially legitimate and bona fide, would put an end to our review." *Hawaii*, 138 S. Ct. at 2420; *see also IRAP*, 961 F.3d at 650 ("[T]he [*Hawaii*] Court noted that under the *Mandel* standard, the analysis of Proclamation 9645 would end once a court concluded that the Proclamation, *on its face*, provided reasons that were 'facially legitimate and bona fide.'" (quoting *Hawaii*, 138 S. Ct. at 2420) (emphasis in original)).

---

[7] Though *Hawaii* only involved an Establishment claim, as explained in the TRO Opposition, courts have recognized that the same standard applies to all constitutional claims relating to the Proclamation, and the Supreme Court has applied *Mandel* to resolve challenges brought under each of the constitutional provisions that the plaintiff raises here.  TRO Opp. at 10-11.

"Under the[] circumstances" explained in its opinion, the Supreme Court in *Hawaii* concluded that "the Government has set forth a sufficient national security justification to survive rational basis review." *Hawaii,* 138 S. Ct. at 2423.  The Court identified those circumstances: "there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility," and the Court "must accept that independent justification." *Id.* at 2421.  The Court also held that ""[i]t cannot be said that . . . the policy is 'inexplicable by anything but animus.'" *Id.* at 2420-21.[8]  Ultimately, the Supreme Court in *Hawaii* held that "plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional claim." *Id.* at 2423.  While the *Hawaii* case arose from the entry of a preliminary injunction, the Fourth Circuit recently reversed a district court decision that *Hawaii* was not controlling on a motion to dismiss, concluding that "the district court misunderstood the import of the Supreme Court's decision in *Hawaii* and the legal principles it applied.  Informed by *Hawaii,* we reverse and remand with instructions to dismiss the plaintiffs' complaints." *IRAP*, 961 F.3d at 639-40.

Here, the Proclamation is explicitly premised on facially legitimate purposes.  The Proclamation explains: "[t]he potential for widespread transmission of the virus by infected individuals seeking to enter the United States threatens the security of our transportation system and infrastructure and the national security," and given "the importance of protecting persons within the United States from the threat of this harmful communicable disease," the President decided it was in the interest to "restrict and suspend" entry of individuals from China.  85 Fed. Reg. at 6710.  The Proclamation also sets forth a bona fide factual basis for that justification,

---

[8] Because those arguments were rejected under rational-basis review, which the Court described as "extend[ing] beyond" the "conventional application of *Mandel*," *id.* at 2420, they even more clearly fail under the more limited review allowed under *Mandel*.

discussing the COVID-19 "public health emergency," the fact that the novel virus was originally discovered in China, the cases in China, and the CDC's concerns regarding transmission.  *See generally* 85 Fed. Reg. 6709.  The Proclamation thus amply establishes a "facially legitimate and bona fide reason" for its restrictions.  *See Mandel*, 408 U.S. at 770.  Therefore, like the proclamation in *Hawaii*, the Proclamation in this case is "expressly premised on [a] legitimate purpose."  *Hawaii*, 138 S. Ct. at 2421.

To the extent that the plaintiff suggests that the Court should assess the legality of the Proclamation based on external evidence including statements by President Trump, such analysis is not appropriate under *Mandel* review.  As the Fourth Circuit explained in its reversal in *IRAP*, the district court had failed to apply *Mandel* review "properly" and instead had erroneously moved "past the face of the Proclamation to consider in its analysis external statements made by the President." 961 F.3d at 651.  Rejecting the district court's reasoning that "*Hawaii* does not instruct courts to disregard these statements or any public pronouncements of a President," the Fourth Circuit explained that Supreme Court's "extensive discussion of *Mandel* in *Hawaii* indicates just the opposite*." Id.* (internal citation omitted); *Hawaii*, 138 S. Ct. at 2420 (recognizing that a "conventional application of *Mandel*" would "ask[ ] *only* whether the policy is facially legitimate and bona fide" (emphasis added)).

To the extent that this Court determines to engage in rational-basis review, in that context it may properly "consider" statements made by President Trump that "cast[] doubt on the official objective of the Proclamation."  *Hawaii*, 138 S. Ct. at 2417, 2420.  But even under rational-basis review, the Proclamation, like the proclamation in *Hawaii*, would survive because that standard looks only to whether there is a "*plausibl*[*e*] *relat*[*ionship*] to the Government's stated objective to protect the country" or, put another way, whether "it is *impossible* to 'discern a relationship to

legitimate state interests.'"  138 S. Ct. at 2420-22 (emphasis added); *see also FCC v. Beach Commc'n*, 508 U.S. 307, 313-14 (1993) ("Where there are 'plausible reasons'" supporting the Proclamation, the court's "inquiry is at an end.").  As the Supreme Court explained in *Beach Communications*, the government policy "comes . . . bearing a strong presumption of validity . . . and those attacking [its] rationality . . . have the burden to negative every conceivable basis which might support it." *Id.* at 314-15 (citations and quotation marks omitted).  Indeed, so long as those rational bases are "arguable," that "is sufficient, on rational-basis review, to 'immuniz[e]' the [governmental] choice from constitutional challenge." *Id.* at 320.  "When the rational basis review standard is applicable, the Supreme Court, as the Court observed in *Hawaii*, 'hardly ever strikes down a policy as illegitimate.'" *IRAP*, 961 F.3d at 652 (citing *Hawaii*, 138 S. Ct. at 2420).

The plaintiffs in *Hawaii* tried to raise various statements by the President that purported to show an "anti-Muslim bias," and the Supreme Court rejected the plaintiffs' argument that "the stated justifications for the policy" were undermined "by reference to extrinsic statements." *Id.* at 2418.  The Supreme Court in *Hawaii* found unpersuasive the plaintiffs' argument that the "President's words strike at fundamental standards of respect and tolerance, in violation of our constitutional tradition," explaining instead that the issue "is not whether to denounce the statements.  It is instead the significance of those statements in reviewing a Presidential directive, neutral on its face, addressing a matter within the core of executive responsibility." *Id.*[9]  The

---

[9] Courts have also acknowledged the importance of the freedom of speech in considering challenges to statutes. *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 513 (D. Md. 2019) (explaining that the President "'possesses an extraordinary power to speak to his fellow citizens and on their behalf'" and that "it cannot be the case that an equal protection claim is born every time a president expresses his views on contentious subjects, such as immigration." (quoting *Hawaii*, 138 S. Ct. at 2417)); *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 374 (4th Cir.) (Niemeyer, J., dissenting) (noting the "pitfalls" of considering external statements such as campaign statements or tweets in evaluating the legality of executive action, and explaining that considering these external statements would "chill political speech directed at voters seeking

Supreme Court further explained that it would "uphold the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Hawaii*, 138 S. Ct. at 2420.  It stated that "there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from [the] religious hostility" that the plaintiffs alleged was the proclamation's only basis.  *Hawaii*, 138 S. Ct. at 2421.  Ultimately, even considering the alleged religious hostility of external statements, the Supreme Court in *Hawaii* concluded that the proclamation survived rational basis review.  *Id.* at 2423.

While the plaintiff argues that the Proclamation is mainly motivated by "discrimination on race, national origin and religion, rather than stopping the spread of coronavirus," Amended Complaint ¶ 53, the Proclamation explains the reasons for its focus on China, including that the outbreak was first detected in China and the number of cases in China.  *See generally* 85 Fed. Reg. 6709.  Therefore, even considering the President's external statements such as his use of the phrase "Chinese virus," the Proclamation survives rational basis review because protecting people within the United States from COVID-19 is, at the very least, a plausible reason for the action taken.  In

---

to make their election decision. It is hard to imagine a greater or more direct burden on campaign speech than the knowledge that any statement made might be used later to support the inference of some nefarious intent when official actions are inevitably subjected to legal challenges."), *as amended* (Feb. 28, 2018), *cert. granted, judgment vacated*, 138 S. Ct. 2710, 201 L. Ed. 2d 1094 (2018), and *cert. granted, judgment vacated*, 138 S. Ct. 2710, 201 L. Ed. 2d 1094 (2018).  The Second Circuit has also discussed the importance of freedom of speech given that the government's conduct is "subject to wide-open, robust debate."  *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 240 (2d Cir. 2019).  As the Court explained:

> This debate encompasses an extraordinarily broad range of ideas and viewpoints and generates a level of passion and intensity the likes of which have rarely been seen. This debate, as uncomfortable and as unpleasant as it frequently may be, is nonetheless a good thing. In resolving this appeal, we remind the litigants and the public that if the First Amendment means anything, it means that the best response to disfavored speech on matters of public concern is more speech, not less.

*Id.*

addition, the President's issuance of additional proclamations restricting entry into the United States further undermines any claimed inference of anti-Chinese hostility. *See* TRO Denial at 1 (given the additional travel proclamations, the "[p]laintiff's argument that any travel bans with respect to China and Iran were discriminatory in violation of his Fifth and Fourteenth Amendment rights has a low likelihood of success on the merits").

The plaintiff attempts to challenge the Proclamation's focus on China based on his own "perception of its effectiveness and wisdom," *Hawaii*, 138 S. Ct. at 2421; however, the Supreme Court rejected a similar argument in *Hawaii*, explaining that the Court "cannot substitute our own assessment for the Executive's predictive judgments on such matters, all of which 'are delicate, complex, and involve large elements of prophecy.'" *Id.* (citing *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948)); *see also id.* at 2409 (rejecting a "searching inquiry into the persuasiveness of the President's justifications"). Courts give deference to a President in his "chosen method" for dealing with foreign relations problems, explaining that "when the President adopts 'a preventive measure . . . in the context of international affairs and national security,' he is 'not required to conclusively link all of the pieces in the puzzle before [courts] grant weight to [his] empirical conclusions." *Id.* at 2409 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010)).[10]

---

[10] In addition, "Presidents have repeatedly exercised their authority to suspend entry on the basis of nationality." *Hawaii*, 138 S. Ct. at 2415 (discussing President Reagan's reliance on § 1182(f) to suspend entry "as immigrants by all Cuban nationals," subject to exceptions and President Carter's invocation of § 1185(a)(1) to deny and revoke visas to all Iranian nationals). *Hawaii* also rejected the hypothetical scenario that it was beyond the president's authority to "suspend entry from particular foreign states in response to an epidemic confined to a single region." *Id.*

Therefore, in light of the Supreme Court's analysis concluding that the proclamation in *Hawaii* met the *Mandel* standard and exhibited "a sufficient national security justification to survive rational basis review," *id*. at 2423, the plaintiff's constitutional claims must be dismissed.

### 2. The Plaintiff's Constitutional Claims Also Cannot Succeed for Additional Reasons

The plaintiff also cannot succeed on his due process claim because the Due Process Clause does not confer an entitlement on persons in the United States regarding the entry of others.  To assert a due process claim, a plaintiff must first show that he has been deprived of a liberty or property interest.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).  But a plaintiff does not have a cognizable liberty or property interest in the issuance of visas to his foreign national family members or their admission into this country.  *See, e.g.*, *Kerry v. Din*, 135 S. Ct. 2128, 2135 (2015) (plurality op.) ("[A] long practice of regulating spousal immigration precludes Din's claim that the denial of [her husband's] visa application has deprived her of a fundamental liberty interest."); *Fiallo*, 430 U.S. at 795 n.6 (rejecting the premise that "the families of putative immigrants . . . have an interest in their admission").[11]  As one district court within this circuit has explained, if a child has a visa, but the parent was refused, the "parent, who does not otherwise have any right to be present in the country, cannot leapfrog over that barrier [that an unadmitted and non-resident alien does not have a constitutional right of entry] simply because their child lives in the United States."  *Alharbi v. Miller*, 368 F. Supp. 3d 527, 571 (E.D.N.Y. 2019).  In *Hawaii*,

---

[11] *See also Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) ("As we have said before, the generic right to live with family is 'far removed' from the specific right to reside in the United States with non-citizen family members."); *Straw v. U.S. Dep't of State*, No. 19 Civ 2294 (ELH), 2020 WL 2490022, at *16 (D. Md. May 14, 2020) ("[L]ower courts have found that there is no due process right to reside in the United States with alien family members, including spouses, parents, and children."); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1022 (N.D. Cal. 2019) (dismissing plaintiffs' due process challenge to presidential proclamation based on an alleged right to the "integrity of the family unit").

the Court reaffirmed that, to the extent a U.S. citizen has any due process rights to assert with respect to a family member living abroad, the government provides all the process that is due by giving a statutory citation to explain a visa denial.  138 S. Ct. at 2419.  Because the Proclamation does not deprive the plaintiff of any liberty or property interest, the plaintiff is not likely to succeed on the due process claim.

Nor is the plaintiff likely to succeed on his Equal Protection claim, as he has failed to allege a violation of his *own* rights under those provisions.  The exclusion of aliens abroad typically raises no constitutional questions because "an alien who seeks admission to this country may not do so under any claim of right."  *Knauff*, 338 U.S. at 542.  As explained above, courts may engage in limited judicial review of the exclusion of an alien abroad under *Mandel*, but only when a U.S. citizen alleges that the exclusion violates the citizen's *own* constitutional rights.  *See Mandel*, 408 U.S. at 756-759.  Here, the Proclamation does not regulate the plaintiff at all; it applies only to aliens abroad.  The plaintiff can therefore only claim that the Proclamation violates the Equal Protection Clause because it discriminates against his foreign national relatives.  But he cannot assert derivative equal protection claims predicated on indirect effects of alleged discrimination against aliens who themselves have no rights to assert.

The Supreme Court has squarely upheld the dismissal of a challenge to allegedly discriminatory policies by plaintiffs who, while suffering economic injuries from the policies, were "not themselves subject to [the allegedly discriminatory] zoning practices" and thus were barred by the rule that "a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see id.* at 509-10 (applying rule to alleged discriminatory zoning practices).  And it is indisputable that the plaintiff's own race and national origin is entirely irrelevant to the Proclamation's

operation:  his relatives would remain subject to the Proclamation if they were traveling to the United States from China, regardless of the plaintiff's background.  The plaintiff tries to evade this fundamental defect in his claim by alleging that the President has been "inciting racial hatred to shift blame to Chinese and Asian American people," and that the plaintiff and his family are "afraid of hate crimes."  Amended Complaint ¶¶ 42, 44.  But the plaintiff cannot bring equal protection claims based on discriminatory comments against Asian Americans generally.  The Supreme Court has squarely held that an Equal Protection Claim based on "stigmatic injury, or denigration" can be brought "only [by] those persons who are *personally denied* equal treatment by the challenged discriminatory conduct," *Allen v. Wright*, 468 U.S. 737, 754-55 (1984) (emphasis added).  Were it otherwise, such claims could be asserted "nationwide [by] all members of the particular . . . groups against which the Government was alleged to be discriminating," thereby "transform[ing] the federal courts into no more than a vehicle for the vindication of the value interests of concerned bystanders."  *Id.* at 755-56 (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the plaintiff's Amended Complaint.

Dated:   New York, New York
         July 10, 2020

                              Respectfully submitted,

                              AUDREY STRAUSS
                              Acting United States Attorney
                              Southern District of New York

                              *Attorney for Defendant*

By:      */s/ Rebecca R. Friedman*
         REBECCA R. FRIEDMAN
         Assistant United States Attorney
         86 Chambers Street, 3rd Floor
         New York, New York 10007
         Tel.: (212) 637-2614
         Fax: (212) 637-2686
         rebecca.friedman@usdoj.gov