UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID LEE,
                       Plaintiff,

        -v-

DONALD TRUMP,
*President of the United States*,
                       Defendant.

20-CV-2034 (JPO)

MEMORANDUM OPINION
AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff David Lee, proceeding *pro se*, has moved for two temporary restraining orders against President Donald Trump relating to the coronavirus pandemic. First, he challenges the federal travel ban with respect to travel from China, and specifically the refusal of the Centers for Disease Control to issue waivers to Plaintiff's family members. Second, he seeks an injunction against President Trump's use of the phrase "Chinese virus" (or "China virus") in reference to the novel coronavirus, which he contends incites race-based hatred against Chinese and Asian American people. (*See* Dkt. Nos. 8–9.) He alleges that these actions violate the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ("APA"), and his equal protection rights under the Due Process Clause of the Fifth and Fourteenth Amendments. (Dkt. No. 8 ¶¶ 58–61; Dkt. No. 9 ¶¶ 58–61.) This Court heard oral argument on Plaintiff's motions telephonically on June 17, 2020.[1] For the reasons that follow, Plaintiffs' motions are denied.

**I.    Legal Standard**

      In the Second Circuit, the standards for a temporary restraining order and preliminary injunction are the same. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). To

---

[1] Plaintiff previously filed a motion for a TRO against the travel ban, which this Court denied on March 23, 2020. (*See* Dkt. Nos. 4, 6.)

obtain a preliminary injunction, the plaintiff must show (1) "a likelihood of success on the merits," (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in the plaintiff's favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (internal quotation marks omitted).

**II.     Discussion**

   **A.     Travel Ban Waiver**

With respect to the federal government's refusal to issue waivers from the travel ban to allow Plaintiff's family members to travel to the United States from China, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits. The President is not an agency within the meaning of the APA, so his actions cannot be reviewed on that basis. *See Dalton v. Specter,* 511, U.S. 462, 468 (1994) ("[T]he APA does not apply to the President."). Plaintiff's constitutional claims, meanwhile, are rooted in executive decisions related to the China travel ban, a presidential proclamation, and are likely foreclosed by the Supreme Court's decision in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018).

   **B.     Use of the Phrase "Chinese Virus"**

Plaintiff argues that the President's use of phrases like "Chinese virus" is intended to incite, and has the effect of inciting, racial animus. One can attempt to defend the use of that phrase (as the President has done) by characterizing it as simply a neutral description of the virus's geographic origin. Such a defense falters, however – as Plaintiff points out – when

applied to the President's use of phrases like "Kung flu," which cannot fairly be described as anything but racially insensitive, if not racist.[2]  (*See* Dkt. No. 24 at 2.)

Despite the normative force of Plaintiff's arguments, he has not shown that he has a justiciable equal protection claim that is likely to succeed on the merits under current law. Discriminatory intent is necessary for an equal protection violation, but it is not sufficient.  The Supreme Court has generally recognized actionable violations of the Equal Protection Clause only in situations where an invalid classification has a *direct effect* on the plaintiff.  The Court has sometimes couched this limiting principle in terms of standing.  *See, e.g., Allen v. Wright*, 468 U.S. 737, 754–56 (1984) (equal protection claim based on "stigmatic injury, or denigration" can be brought "only [by] those persons who are personally denied equal treatment by the challenged discriminatory conduct") (internal quotation marks and citation omitted).  At other times, the idea has been expressed as part of the merits of an equal protection claim.  *See, e.g., Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 783 (2007) (Kennedy, J., concurring) ("plans [that] classify individuals by race *and allocate benefits and burdens on that basis*" trigger strict scrutiny under the Equal Protection Clause) (emphasis added); *accord id*. at 720 (opinion of the Court).  Plaintiff has not shown that the President's

---

[2] President Trump's use of the phrase "Kung flu" reportedly occurred during campaign rallies, raising the question whether it constitutes speech as President — and therefore government speech — as opposed to speech as a candidate.  *See, e.g.*, Washington Post, *With 'kung flu,' Trump sparks backlash over racist language – and a rallying cry for supporters* (June 24, 2020).  In contrast, the President has used the phrase "Chinese virus" in various official contexts, including on Twitter.  *See Knight First Amendment Inst. v. Trump*, 928 F.3d 226, 235–36 (2d Cir. 2019) (President's use of Twitter is official government action).

3

speech has a sufficiently direct and immediate effect on Plaintiff to make out a likely meritorious equal protection claim.³

The Court also concludes, in any event, that the public interest would not be served by issuance of the injunction sought by Plaintiff — namely an injunction prohibiting the President from using the phrase "Chinese virus" and similar language. "Even noxious government speech generally furthers [the] purposes [of facilitating participation in democratic self-governance and contributing to the available marketplace of ideas] by revealing the government's preferences to the electorate and by adding to the ongoing public discourse."⁴ Presidential speech is unique in our system of government and has a complex and important status, both legally and politically. "The President's utterances often represent the purest embodiment of politics."⁵ As the Second Circuit stated last year: "[I]f the First Amendment means anything, it means that the best response to disfavored speech on matters of public concern is more speech, not less."⁶

## III. Conclusion

For the foregoing reasons, Plaintiff's second and third motions for a temporary restraining order are DENIED.

---

³ While Plaintiff does allege that he and his wife "live in fear in the United States every day" because the President is "inciting racial hatred against Asian Americans" (Dkt. No. 9 at 12), such allegations are too attenuated to establish a direct and immediate effect on Plaintiff. To be sure, some scholars have criticized the courts' restrictive approach to the cognizable harms from government expression under the Equal Protection Clause, arguing for a more robust equal protection doctrine. *See, e.g.*, Helen Norton, *The Equal Protection Implications of Government's Hateful Speech*, 54 Wm. & Mary L. Rev. 159 (2012). Regardless of the merit of those arguments, this Court is bound to apply equal protection doctrine as it exists.

⁴ Norton, *supra*, at 170.

⁵ Katherine Shaw, *Beyond the Bully Pulpit: Presidential Speech in the Courts*, 96 Tex. L. Rev. 71, 133 (2017).

⁶ *Knight First Amendment Inst.*, 928 F.3d 226, at 240.

The Clerk of Court is directed to close the motions at Docket Numbers 8 and 9.

SO ORDERED.

Dated: August 6, 2020
       New York, New York

                                                    J. PAUL OETKEN
                                              United States District Judge